1

2

3

4                  UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF WASHINGTON
5
   JAKE LOUIS TAFURI,              )
6                                  )   No. CV-12-00055-CI
        Plaintiff,                 )
7                                  )   ORDER GRANTING PLAINTIFF'S
   v.                              )   MOTION FOR SUMMARY JUDGMENT
8                                  )   AND REMANDING FOR IMMEDIATE
   CAROLYN W. COLVIN, Commissioner )   AWARD OF BENEFITS
9  of Social Security,[1]          )
                                   )
10       Defendant.                )
                                   )
11 _____)

12      BEFORE THE COURT are cross-Motions for Summary Judgment.  ECF

13 No. 13, 16.  Attorney Lora Lee Stover represents Carolyn W. Colvin

14 (Plaintiff); Special Assistant United States Daphne Banay represents

15 the Commissioner of Social Security (Defendant).  The parties have

16 consented to proceed before a magistrate judge.  ECF No. 6.  After

17 reviewing the administrative record and briefs filed by the parties,

18 the court **GRANTS** Plaintiff's Motion for Summary Judgment and **REMANDS**

19 for an award of immediate benefits.

20

21                         **JURISDICTION**

22      On  December  4,  2008,  Plaintiff  protectively  filed  an

23

24      [1]Carolyn W. Colvin became the Acting Commissioner of Social

25 Security on February 14, 2013.  Pursuant to FED. R. CIV. P. 25(d),

26 Carolyn W. Colvin is substituted for Michael J. Astrue as the

27 Defendant in this suit. No further action need be taken to continue

28 this suit.  42 U.S.C. § 405(g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

application for supplemental security income insurance benefits, alleging disability beginning July 20, 2000.  Tr. 27; 139.  In his application for benefits, Plaintiff reported that he stopped working due to "mental health mental health dysthymia [sic], social phobia with anxiety feature, schizotypal personality disorder with dominant paranoid features.  Mental disability."  Tr. 143.  Plaintiff's claim was denied initially and on reconsideration, and he requested a hearing before an administrative law judge (ALJ).  Tr. 81-90.  A hearing was held on December 8, 2009, which medical expert Steven Rubin, Ph.D., vocation expert Polly Peterson, and Plaintiff, who was represented by counsel, testified.  Tr. 41-77.  ALJ Paul T. Hebda presided.  Tr. 41.  The ALJ denied benefits on December 31, 2009. Tr. 27-37.  Plaintiff sought review with the Appeals Council, and was denied.  Tr. 1-3.  The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here.  At the time of the hearing, Plaintiff was 26 years old, living in an apartment in Deer Park, with his girlfriend.  Tr. 59-60.  Plaintiff socializes only with his girlfriend and his parents.  Tr. 62.

Plaintiff graduated from high school in 2001, and for a short time he attended the Seattle Arts Institute, but he testified that he had to drop out when he had a "very large seizure while I was there due to the extreme stress from living in such a populated area."  Tr. 60-62; 265.  Plaintiff also briefly attended Spokane Falls Community College and studied graphic design.  Tr. 61. Plaintiff briefly worked at a seasonal tree farm, and he testified

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

1   that whenever he had to interact with his boss or other employees,
2   he experienced stress.  Tr. 63.  Plaintiff also worked briefly in a
3   night-time stocking job for a grocery store, and he testified that
4   the other stockers "did not take kindly to me and were constantly
5   talking about me in the next aisle."  Tr. 64.  He also said he was
6   unable to remember the produce codes, so he was fired.  Tr. 64.

7       Plaintiff testified that "all day, everyday," he sits at the
8   computer and creates art.  Tr. 66.  He does basic household chores,
9   "straightening up and dishes."  Tr. 67.  He testified that his sleep
10  is "extremely erratic," and on occasion, he stays up for days in a
11  row, and then sleeps for 16 hours.  Tr. 67.  Plaintiff testified
12  that he recently began counseling at Spokane Family Services because
13  he knows he needs to "try to take steps forward."  Tr. 67-68.

14                        **ADMINISTRATIVE DECISION**

15      At step one, ALJ Hebda found Plaintiff had not engaged in
16  substantial gainful activity since December 4, 2008, the application
17  date.  Tr. 29.  At step two, he found Plaintiff had the following
18  severe impairments: schizotypal personality disorder with social
19  phobia and dysthymia.  Tr. 29.  At step three, the ALJ determined
20  Plaintiff's impairments, alone and in combination, did not meet or
21  medically equal one of the listed impairments in 20 C.F.R., Subpart
22  P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).  Tr.
23  30.  The ALJ found Plaintiff has the Residual Functional Capacity
24  ("RFC") to perform

25          [M]edium work . . . except low stress work, *i.e.*, only
            occasional decisions are required and there are only
26          occasional changes in the work setting.  The work should
            also involve superficial interaction with public and only
27          occasional interaction with coworkers but with no tandem
            tasks required.  He can have occasional contact with
28          supervisors.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

1  Tr. 31.

2      In his step four findings, the ALJ found Plaintiff's statements

3  regarding pain and limitations were not credible to the extent they

4  were inconsistent with the RFC findings.   Tr. 32.   The ALJ found

5  that Plaintiff had no past relevant work, and after considering

6  Plaintiff's age, education, work experience, and residual functional

7  capacity, jobs exist in significant numbers in the national economy

8  that the Plaintiff can perform, such as chicken farm laborer, store

9  laborer, or canvas shop laborer.   Tr. 36-37.

10                          **STANDARD OF REVIEW**

11     In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

12 court set out the standard of review:

13        A district court's order upholding the Commissioner's
          denial of benefits is reviewed *de novo*. *Harman v. Apfel*,
14        211 F.3d 1172, 1174 (9th Cir. 2000).   The decision of the
          Commissioner may be reversed only if it is not supported
15        by substantial evidence or if it is based on legal error.
          *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).
16        Substantial evidence is defined as being more than a mere
          scintilla, but less than a preponderance.   *Id.* at 1098.
17        Put another way, substantial evidence is such relevant
          evidence as a reasonable mind might accept as adequate to
18        support a conclusion.   *Richardson v. Perales*, 402 U.S.
          389, 401 (1971).   If the evidence is susceptible to more
19        than one rational interpretation, the court may not
          substitute its judgment for that of the Commissioner.
20        *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of
          Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
21

22        The ALJ is responsible for determining credibility,
          resolving conflicts in medical testimony, and resolving
23        ambiguities.   *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th
          Cir. 1995).   The ALJ's determinations of law are reviewed
24        *de novo*, although deference is owed to a reasonable
          construction of the applicable statutes.   *McNatt v. Apfel*,
25        201 F.3d 1084, 1087 (9th Cir. 2000).

26     It is the role of the trier of fact, not this court, to resolve

27 conflicts in evidence.   *Richardson,* 402 U.S. at 400.   If evidence

28 supports more than one rational interpretation, the court may not

substitute its judgment for that of the Commissioner. *Tackett*, 180
F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).
Nevertheless, a decision supported by substantial evidence will
still be set aside if the proper legal standards were not applied in
weighing the evidence and making the decision. *Brawner v. Secretary
of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If
substantial evidence exists to support the administrative findings,
or if conflicting evidence exists that will support a finding of
either disability or non-disability, the Commissioner's
determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-
1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Commissioner has established a five-step sequential
evaluation process for determining whether a person is disabled.  20
C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S.
137, 140-42 (1987).  In steps one through four, the burden of proof
rests upon the claimant to establish a prima facie case of
entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99.
This burden is met once a claimant establishes that a physical or
mental impairment prevents him from engaging in his previous
occupation.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a
claimant cannot do his past relevant work, the ALJ proceeds to step
five, and the burden shifts to the Commissioner to show that (1) the
claimant can make an adjustment to other work; and (2) specific jobs
exist in the national economy which claimant can perform. *Batson v.
Commissioner of Social Sec. Admin.,* 359 F.3d 1190, 1193-94 (2004).
If a claimant cannot make an adjustment to other work in the
national economy, a finding of "disabled" is made. 20 C.F.R. §§

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

1  404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

2                        **ISSUES**

3      Plaintiff contends that the ALJ erred in improperly rejecting
4  the opinions of Plaintiff's medical providers, in crafting a
5  deficient residual functional capacity and by posing an incomplete
6  hypothetical to the vocational expert.  ECF No. 14 at 12-14.

7  **A.   Medical Opinions**

8      Plaintiff argues that the ALJ failed to give proper reasons for
9  rejecting the DSHS assessments of W. Scott Mabee, Ph.D., and the
10 opinions from testifying expert Stephen Rubin, Ph.D., and by relying
11 upon only a portion of the assessment by Mary Gentile, Ph.D.  ECF
12 No. 14 at 11.

13     **1.   W. Scott Mabee, Ph.D.**

14     The ALJ explained that he gave little weight to the DSHS
15 opinions – the Psychological/Psychiatric Evaluations completed by
16 Ms. Carroll, Mr. Erickson and approved by Dr. Mabee – because they
17 were not supported by objective evidence.  Tr. 34-35.  The ALJ noted
18 that the Plaintiff had average functioning in cognitive functioning,
19 memory and IQ, and he had full impulse control and has no limits in
20 exercising judgment.  The ALJ acknowledged Plaintiff likely has
21 limitations in social functioning, but because evidence of over-
22 reporting of symptoms, the ALJ concluded that the RFC adequately
23 provided Plaintiff's schizotypal personality disorder.  Tr. 35-36.

24     Three types of medical sources are recognized in social
25 security cases: (1) treating physicians; (2) examining physicians;
26 and (3) those who neither examine nor treat the claimant, called
27 reviewing or nonexamining physicians.  *Lester* v. *Chater*, 81 F.3d
28 821, 830 (9th Cir. 1995).  Generally, a treating physician's opinion

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 6

should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. *Id.* Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. *Id.*

Because the Social Security Administration ("SSA") favors the opinion of a treating physician over non-treating physicians, if the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. *Id.* at 830-31. "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989)). However, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* at 631-32 (quoting Social Security Ruling ("SSR") 96-2p). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

1   test for controlling weight." SSR 96-2p.

2        In this case, Dr. Mabee approved and adopted two examinations
3   of Plaintiff: a 2007 examination by Victoria Carroll, MS Cand., and
4   a 2008 examination by Steven Erickson, M.Ed., LMHC.   Dr. Mabee
5   examined Plaintiff in 2009.   Tr. 258-80; 329-54.   After Ms.
6   Carroll's 2007 examination of Plaintiff, Dr. Mabee approved an
7   assessment of Plaintiff that included multiple severe social
8   limitations, and multiple mild cognitive limitations. Tr. 273. Ms.
9   Carroll indicated Plaintiff had four severe limitations in social
10  functioning, including the abilities to: (1) relate appropriately to
11  co-workers and supervisors; (2) interact appropriately in public
12  contacts; (3) respond appropriately to and tolerate the pressures
13  and expectations of a normal work setting; and (4) control physical
14  or motor movements and maintain appropriate behavior.  Tr. 273.  Ms.
15  Carroll administered multiple tests and noted that the MMPI-2 was
16  invalid, a result she opined was "likely the result of his current
17  psychological distress and not an intentional distortion of his
18  symptoms."  Tr. 278.

19       Ms. Carroll diagnosed Plaintiff with social phobia – with
20  general anxiety features, dysthymia, and schizotypal personality
21  disorder with borderline features.  Tr. 278-79.  At that time, Ms.
22  Carroll opined, "[i]t is highly unlikely that Mr. Tafuri would be
23  able to obtain or maintain employment currently."  Tr. 279.  She
24  also stated that while Plaintiff should be able to understand and
25  follow simple and complex verbal instructions, and to focus and
26  sustain concentration and memory, his ability to reason and use
27  appropriate judgment is impacted by his mental illness.   Tr. 279-
28  80.  Ms. Carroll concluded that Plaintiff would be unable to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

function in a typical work environment.

The following year, Mr. Erickson's September 6, 2008, evaluation included moderate limitations in the ability to exercise judgment and make decisions and in the ability to perform routine tasks. Tr. 260. Mr. Erickson also assessed Plaintiff with a severe limitation in the ability to interact appropriately in public contacts, and with marked limitations in the ability to (1) relate appropriately to co-workers and supervisors; (2) respond appropriately to and tolerate the pressures and expectations of a normal work setting; and (3) control physical or motor movements and maintain appropriate behavior. Tr. 260. Mr. Erickson noted that Plaintiff's profile was questionably valid, in that with respect to negative impression management, some indications existed that Plaintiff "may have over-endorsed items that may create an unfavorable impression. His results do raise the possibility that he may have exaggerated some of his psychological complaints and symptoms." Tr. 267. In the narrative, Mr. Erickson observed that Plaintiff's test results indicated he may become quite anxious and threatened by interaction with unknown individuals, and that his social judgment is likely poor in terms of making difficult decisions. Tr. 267. Morever, Mr. Erickson opined that it is likely Plaintiff is "plagued by worry to a degree that it would have a negative impact on his ability to concentrate and attend." Tr. 267. Mr. Erickson described how Plaintiff's social limitations would likely affect his ability to work:

> [Plaintiff's] response pattern suggests he is very suspicious and possibly hostile in his relationships with others. He may also be extremely sensitive in his interactions with others and likely harbors strong feelings of resentment. This would make working

relationships with others likely very strained, despite efforts by those around him to demonstrate support and assistance.

. . .

. . . This consistent fear of being exposed to social situations will created marked limitations in terms of his willingness to participate socially or in an employment situation.

Tr. 268.

Mr. Erickson also cautioned that when Plaintiff is not anxious, he has the cognitive ability to focus and retain information, but "when physically responding to anxiety, [Plaintiff's] cognitive abilities will be limited." Tr. 268-69. Mr. Erickson concluded that due to his personality features and social anxiety, it is unlikely he would be able to either obtain or maintain employment. Tr. 269. Mr. Erickson concluded, "Cognitively, [Plaintiff] should do well in an isolated setting. However, when required to function around groups of unknown individuals, he would experience cognitive limitations." Tr. 269.

Finally, the third DSHS examination of Plaintiff was conducted by Dr. Mabee, on October 8 and 13, 2009. Tr. 334. Dr. Mabee administered several tests to Plaintiff and observed Plaintiff's odd presentation and behavior, and he opined these limitations would markedly affect Plaintiff's work activities. Tr. 330. Dr. Mabee assessed Plaintiff with moderate limitations related to discomfort around people and/or fear of judgment; self-consciousness and/or difficulty meeting others; low motivation and/or sleep patterns; and odd thinking and speech. Tr. 330.

Dr. Mabee diagnosed Plaintiff with social phobia, generalized dysthymic disorder and schizotypal personality disorder with

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

borderline features.  Tr. 331.  He assessed Plaintiff with four marked limitations in the social ability to: (1) relate appropriately to co-workers and supervisors; (2) interact appropriately in public contacts; (3) respond appropriately to and tolerate the pressures and expectations of a normal work setting; and (4) maintain appropriate behaviors in a work setting.  Tr. 332. Dr. Mabee found Plaintiff was moderately limited in his ability to exercise judgment and make decisions and in his ability to care for himself, including personal hygiene and appearance.  Tr. 332.  Dr. Mabee opined that Plaintiff is cognitively capable of understanding and carrying out simple and relatively complex tasks, but he can sustain concentration for only a short period of time.  Tr. 332. Dr. Mabee stated that Plaintiff would work best in positions that have limited contact with co-workers, supervisors and the general public, and he will likely need extra encouragement to ask questions and request assistance.  Tr. 332.  Finally, Dr. Mabee noted "Plaintiff's paranoia and social anxiety does not appear to have improved over the past year."  Tr. 334.

The ALJ's first reason for rejecting this evidence was that the three opinions were not supported by objective evidence.  To reject examining physician opinions in favor of contradictory non-examining opinions, an ALJ must provide "specific and legitimate" reasons. *Lester,* 81 F.3d at 830.  The ALJ's first reason - that the conclusions of Dr. Mabee, Mr. Erickson and Ms. Carroll are not supported by objective evidence - fails.  In each of the DSHS assessments, Plaintiff was administered a battery of objective tests, that were interpreted by the examiner and approved by Dr. Mabee.  See Tr. 262-63; 265; 275-76; 335-43.

For example, in the 2007 examination, Plaintiff's objective test scores indicated sufficient effort, average intelligence scores, and an invalid MMPI-2 score due to an elevated F-Scale, that was "likely a result of his current psychological distress and not an intentional distortion of his symptoms." Tr. 278. Ms. Carroll noted that Plaintiff's GAF score of 47 suggests he experiences serious difficulties functioning on a daily basis. Tr. 279.

Similarly, in the 2008 examination, objective tests results indicated Plaintiff gave sufficient effort, and the HAM-A score indicated "a severe level of reported and observed anxiety." Tr. 266. His BDI score indicated a moderate level of depression, and psychological tests indicated roughly average abilities related to memory. Tr. 267. The PAI test, which measures emotional functioning, was questionably valid, because some indications exist that Plaintiff "over-endorsed items that may create an unfavorable impression." Tr. 267. The PAI results indicated that Plaintiff is withdrawn, isolated, has few if any interpersonal relationships and experiences a "discomforting level of anxiety and tension." Tr. 267. The PAI results indicate that Plaintiff likely is "plagued by worry to a degree that it would have a negative impact on his ability to concentrate and attend." Tr. 267. Additionally, Mr. Erickson reported "consistent with his clinical interview, [Plaintiff's] PAI results indicate he is experiencing overt physical symptoms of stress and anxiety such a sweaty palms, trembling hands, irregular heart beats, and shortness of breath." Tr. 268.

Additionally, the 2009 objective testing administered by Dr. Mabee indicated several areas of the MMPI-2RF scales that were indicative of critical limitations, including feelings of

helplessness/hopelessness, anxiety, and ideas of persecution. Tr. 353. Dr. Mabee, relying upon the results from the varied tests, indicated Plaintiff had four marked limitations and two moderate limitations in his ability to perform normal, daily work. Tr. 332.

Contrary to the ALJ's conclusion, the objective medical evidence supports the assessments made by the examiners. In addition to the test results, the examiner's observations also support their diagnoses and assessments. Mental impairment "signs" are medically demonstrable phenomena that indicate specific psychological abnormalities, such as abnormalities of behavior or mood and that are "shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528 (b). The results of the objective medical tests administered to Plaintiff are sufficient evidence of Plaintiff's mental impairment and the conclusions provided by the various medical examiners.

It is well-settled that an ALJ may not render his or her own medical opinion or substitute his or her own diagnosis for that of a claimant's physician. See *Tackett*, 180 F.3d at 1102-03 (ALJ erred in rejecting physicians' opinions and finding greater residual functional capacity based on claimant's testimony concerning a road trip; there was no medical evidence to support the ALJ's determination); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is forbidden from making his own medical assessment beyond that demonstrated by the record); *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (an "ALJ cannot arbitrarily substitute his own judgment for competent medical opinion") (internal quotation marks and citation omitted); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and

make their own independent medical findings").  In this case, the ALJ's conclusion was contradicted by several mental health experts interpretations of Plaintiff's test results, and, thus, the ALJ erred by relying upon his own interpretation of Plaintiff's test results.

The ALJ's second reason for rejecting the three DSHS opinions was that while he acknowledged Plaintiff has social function limitations, because of the presence of "over-reporting," the ALJ concluded the RFC adequately addressed Plaintiff's social limitations.[2]  Tr. 35-36.  Ms. Carroll, with Dr. Mabee's approval, explained that Plaintiff's invalid MMPI-2 scores were likely the result of psychological distress and not an intentional distortion of his symptoms.  Tr. 278.  Dr. Rubin, noted below, explained that Plaintiff's over-reporting was a symptom of his mental illness - Plaintiff is convinced he has a very serious disorder.  Tr. 52-53.  These medical opinions about the cause and proper interpretation of

_____

[2]The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the RFC.  Tr. 32.  The ALJ made no specific findings, and provided no explanation related to this credibility determination.  An ALJ may reject a claimant's testimony regarding the severity of symptoms only if the ALJ makes specific findings stating "clear and convincing" reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.  *Id.*  The ALJ failed to do so here.

Plaintiff's over-reporting were not contradicted, and when the opinions are properly credited, the ALJ's conclusion that the RFC adequately accommodated Plaintiff's severe social limitations fails.

### 2. Steven Rubin, Ph.D.

Steven Rubin, Ph.D., a clinical psychologist, testified as a non-examining physician at Plaintiff's hearing. Tr. 48-56. After reviewing Plaintiff's records, Dr. Rubin testified that Plaintiff suffers from schizotypal personality disorder, in addition to dysthymia. Tr. 51. Dr. Rubin noted that the record was disconcerting due to the widely varying severity of impairment noted by different physicians. Tr. 52. Dr. Rubin opined that the disparities could likely be explained by reason of Plaintiff's condition worsening, as the most recent evaluation reflected the most severe limitations. Tr. 52-53. Dr. Rubin also opined that Plaintiff's condition will worsen until and unless he has treatment and counseling. Tr. 53-54.

Additionally, Dr. Rubin distinguished Plaintiff's "over-reporting" from malingering:

> Mr. Tafuri has been convinced for many years that he has a serious disorder, that he's very different from other people, that he can't stand social relationships. . . . [T]hat issue of somatoform disorder, he will over-report medical problems, even if there is little medical evidence supporting it. So I don't think that there's a question here of malingering; I think there's a question of a young man who has had problems chronically, who sees social relationships as very difficult. . . . And I think he over-reports on questionnaires, hence we would see very high elevations in an MMPI. But I am concerned that his disorder has either continued or worsened.

Tr. 52-53.

The ALJ gave Dr. Rubin's opinions little weight. Tr. 34. The ALJ found that Dr. Rubin's assessment of Plaintiff's moderate and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 15

severe limitations in social functioning were "not supported by the evidence in the [DSHS] narrative reports." Tr. 34. The ALJ stated he relied upon the facts that Plaintiff arrived on time, cooperated, timely finished testing and was able to interact well with medical providers and maintain appointments as contradictions to Dr. Rubin's conclusions. Tr. 34. The ALJ also added that while Dr. Rubin "mentioned claimant's over-reporting in his testimony, it appears he gave no consideration to that fact when assigning these limitations." Tr. 34.

The ALJ's analysis is problematic. First, while the ALJ used the DSHS reports to discount Dr. Rubin's assessments, in seeming contradiction, the ALJ gave "little weight" to the DSHS assessments. Tr. 34. Apparently, the ALJ relied upon the DSHS reports of Plaintiff's punctuality, ability to focus upon the tasks during the administered tests and his cooperation with interviewers. Tr. 34. Dr. Rubin acknowledged that while Plaintiff can "concentrate enough to take the psychological tests," he opined that this single factor does not reflect the full spectrum of Plaintiff's condition. Tr. 56. Dr. Rubin opined that Plaintiff has at least two marked limitations - in the ability to work in coordination with or proximity to others without being distracted and in the ability to interact with the general public. Tr. 55. Dr. Rubin indicated Plaintiff may have another marked limitation in dealing with the general public. Tr. 55.

Additionally, the ALJ's conclusion that Dr. Rubin failed to consider Plaintiff's over-reporting is not supported by the record. In fact, Dr. Rubin specifically addressed Plaintiff's over-reporting and explained that the condition was not malingering, as inferred by

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16

the ALJ, but instead was a symptom of Plaintiff's somatoform disorder. Tr. 53-54. As such, contrary to the ALJ's conclusion, the Plaintiff's over-reporting supported the diagnosis and provided additional evidence of his limitations. In sum, the ALJ erred by rejecting Dr. Rubin's testimony.

### 3.   Mary A. Gentile, Ph.D.

The Plaintiff contends that the ALJ erred by stating that he gave substantial weight to the opinion of Dr. Gentile, but ignored large portions of Dr. Gentile's opinion. ECF No. 14 at 12. The ALJ gave "significant weight" to the opinion of Mary A. Gentile, Ph.D., a non-examining physician who completed the Psychiatric Review Technique form and the Mental Residual Functional Capacity Assessment. Tr. 34; 309-26. The ALJ emphasized that he relied heavily upon Section III of the assessment for guidance in determining Plaintiff's RFC. Tr. 34.

On January 9, 2009, Dr. Gentile completed a Psychiatric Review Technique form ("PRT") and a Mental Residual Functional Capacity form ("MRFC"). Tr. 309-322; 323-25. In the PRT, Dr. Gentile rated Plaintiff's functional limitations as mild related to restriction of activities of daily living and difficulties maintaining concentration, persistence or pace, and moderate related to difficulties in maintaining social functioning. Tr. 319. In the MRFC, Dr. Gentile assessed Plaintiff with marked limitations related to the ability to interact appropriately with the general public. Tr. 324. Additionally, Dr. Gentile found Plaintiff had moderate limitations in three areas: (1) the ability to accept instructions and respond appropriately to criticism from supervisors; (2) the ability to get along with coworkers or peers without distracting

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 17

them or exhibiting behavior extremes; and (3) the ability to respond appropriately to changes in the work setting. Tr. 324.

In Section III of the MRFC, Dr. Gentile opined that Plaintiff is cognitively intact with average intelligence and memory skills. Dr. Gentile also noted that Plaintiff tolerated two testing evaluations well and concluded Plaintiff demonstrated an ability to sustain 2-hour intervals of work. Tr. 325. Dr. Gentile also observed that Plaintiff has anxiety and personality issues and recommended Plaintiff work in isolated environments away from the general public and have limited coworker interaction. Dr. Gentile opined that Plaintiff would function best in more routine environments. Tr. 325.

First, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Additionally, an ALJ may not selectively rely on only those portions of the treatment record that support his ultimate conclusion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)); *Day*, 522 F.2d at 1156 (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

In this case, the ALJ explicitly relied upon Section III, a specific portion of Dr. Gentile's assessment, to the exclusion of the other sections of the assessment, to support his opinion. On review, Dr. Gentile's overall assessment of Plaintiff supports the

DSHS assessments that indicate Plaintiff has at least one marked and several moderate limitations in his social functioning.   It is notable Dr. Gentile opined that Plaintiff could sustain a two-hour interval of work, but provided no opinion about Plaintiff's ability to sustain an eight-hour workday. The ALJ's reliance upon only a single portion of Dr. Gentile's opinion was error.   Given that the ALJ assigned "significant weight" to the findings of Dr. Gentile, and the record as a whole supports Dr. Gentile's findings related to the Plaintiff's severe limitations in social functioning, the ALJ erred by failing to properly consider, or to provide sufficient reasons for rejecting, Dr. Gentile's findings in determining plaintiff's RFC.

**B.    Remand for Award of Benefits**

While the usual course is to remand for further proceedings, this court may remand for an immediate award of benefits "when no useful purpose would be served by further administrative proceedings, . . . or when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).   This court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when the following three conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide "clear and convincing" reasons for discounting the testimony of the claimant and the opinion of the claimant's treating and examining physicians. See *Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 594; *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Rodriguez*, 876 F.2d at 763.

Because the ALJ did not provide clear and convincing reasons for rejecting the evidence of Dr. Mabee, Dr. Rubin and the entire opinion of Dr. Gentile, this court credits all of that evidence as true.  As for the second factor, the record is fully developed.  Finally, the credited opinions demonstrate that the claimant is unable to maintain gainful employment.  Vocational expert Polly Petersen opined that if the combination of mental impairments attributed to Plaintiff by Dr. Rubin were present, all competitive work would be precluded.  Tr. 76.  Thus, the ALJ's decision is reversed and remanded for the immediate award of benefits.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error.  The decision is therefore **REVERSED** and the case is **REMANDED** for an immediate award of benefits.  Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED** and the matter is **REMANDED** to the Commissioner for an award of immediate benefits.

2.  Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 20

1        3.   An application for attorney fees may be filed by separate

2   motion.

3        The District Court Executive is directed to file this Order and

4   provide a copy to counsel for Plaintiff and Defendant. Judgment

5   shall be entered for Plaintiff, and the file shall be **CLOSED**.

6        DATED April 17, 2013.

7

8                      ___S/ CYNTHIA IMBROGNO_____
                        UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT – 21